UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF Michigan
SOUTHERN DIVISION


OTIS LEE CASTLEBERRY,

        Petitioner,

                                Case No. 4:05-CV-39

v.

                                Hon. ROBERT HOLMES BELL

JOHN PRELESNIK,

        Respondent.

_____/

### REPORT AND RECOMMENDATION

        Petitioner, Otis Lee Castleberry, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.        Background

        The Michigan Court of Appeals summarized the underlying facts of petitioner's criminal case as follows:

> On May 15, 2001, Rodney Lewis and Perry Walker drove to a neighborhood store. Both men had been drinking earlier in the evening. As they pulled into the store parking lot, they narrowly missed hitting defendant. After Mr. Lewis parked the vehicle, defendant approached and began to speak with him. Mr. Walker testified that he exited the vehicle to find out what was happening. At some point during the conversation, Mr. Lewis opened the trunk of his vehicle. Mr. Walker claimed that while Mr. Lewis was looking in the truck, defendant pulled a gun from inside his waistband and shot Mr. Lewis. Defendant then turned and fired his weapon at Mr. Walker. Several witnesses testified that defendant ran across the street after the shootings but returned a few seconds later to shoot Mr. Lewis in the head.
>
> Early the next morning, defendant turned himself into the police. While defendant informed the police that he shot Mr. Lewis and Mr. Walker, he maintained that he acted in self-defense. Defendant asserted that he thought Mr. Lewis was looking for a weapon in his trunk. A subsequent search of the area revealed no weapons other than a small souvenir-type baseball bat in the trunk. The autopsy

showed that Mr. Lewis was shot twice in the back and once to the right side of his head. Dr. Robert Clark testified that Mr. Lewis died as a result of the gunshot wound to the head.

*People v. Castleberry*, No. 238900 (Mich. App. Oct. 2, 2003) (docket no. 17).

Following a jury trial in the Berrien County Circuit Court, petitioner was convicted of: first-degree murder, M.C.L. § 750.316; assault with intent to do great bodily harm, M.C.L. § 750. 84; carrying a concealed weapon, M.C.L. § 750.227; and possession of a firearm during the commission of felony, M.C.L. § 750.227b. *Id.* Petitioner was sentenced to life imprisonment for the murder conviction, 57 to 120 months imprisonment for the assault conviction, 24 to 60 months imprisonment for the carrying a concealed weapon conviction, and 2 years imprisonment for the felony-firearm conviction. *Id.*

Petitioner through counsel filed his claim of appeal in the Michigan Court of Appeals raising issues of jury instruction error, prosecutor misconduct, and ineffective assistance of counsel:

I.    Defendant was deprived of his right to due process and a fair trial under the 14th amendment to the United States constitution and under section 17, article 1, Michigan constitution 1963 when the trial judge failed and omitted to adequately instruct the jury that the defendant having raised the defense of self-defense the prosecution had the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense; and when the tenor of the instruction had the effect of shifting the burden of proof onto the defendant.

II.    Defendant was denied his right to due process and to a fair trial under the 14th amendment to the United States constitution and under section 17, article 1, Michigan constitution 1963 when the prosecutor in voir dire, opening statement to the jury and in argument to the jury (1) testified to facts of his own personal knowledge and (2) bolstered the credibility of his witnesses.

III.    Defendant was deprived of his right under the 6th amendment to the united states constitution and under section 20, article 1, Michigan constitution 1963 to effective assistance of counsel on the trial level when his trial counsel failed and omitted to object to the prosecutor's

improper remarks to the jury in voir dire, opening, summation and in rebuttal.

Petitioner filed a *pro se* (standard 11) supplemental brief on appeal raising further

issues of ineffective assistance of counsel, prosecutor misconduct, and cumulative error:

I.      Defendant was denied his 6th amendment constitutional right to the effective assistance of counsel as trial counsel failed to move for a change of venue or for disqualification of the judge where the preliminary examination judge also presided over defendant's jury trial in the circuit court as the trial judge.

II.     Defendant was denied his 6th and 14th amendment constitutional rights to the effective assistance of counsel and to present a defense where trial counsel promised the jury that the defendant would be testifying and failed to call the defendant.

III.    Defendant was denied his 14th amendment constitutional right to a fair trial and due process of law where the prosecutor violated the hearsay rule.

IV.     Defendant was denied his 6th amendment constitutional right to the effective assistance of counsel where counsel failed to object to the prosecutor's impermissible use of hearsay.

V.      Even if no assignment of error is sufficient for a reversal, the totality of errors denied defendant a fair trial, us const. Am. V & xiv; mich. Const. 1963, art. 1, § 17.

The Michigan Court of Appeals affirmed petitioner's convictions. *People v. Castleberry*, No.

238900 (Mich. App. Oct. 2, 2003).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court

raising five claims raised in the Michigan Court of Appeals (Issues I-V) and one new claim of

prosecutorial misconduct (Issue VI):

I.      When the trial judge failed and omitted to adequately instruct the jury that the defendant having raised the defense of self defense the prosecution had the burden of proving beyond a reasonable doubt that defendant did not act in self defense.

II. The prosecutor in voir dire, opening statement to the jury, and in argument to the jury (1) testified to facts of his own personal knowledge and (2) bolstered the credibility of his witnesses.

III. To effective assistance of counsel failed and omitted to object to the prosecutor's improper remarks to the jury in voir dire, opening, summation, and in rebuttal.

IV. Effective assistance of counsel as trial counsel failed to move for a change of venue or for disqualification of the judge where the preliminary examination judge also presided over defendant's jury trial in the circuit court as the trial judge.

V. Effective assistance of counsel and to present a defense where trial counsel promised the jury that the defendant would be testifying and failed to call the defendant.

VI. Prosecutorial misconduct. The issue is that the prosecution denied defendant a fair trial, by knowingly using perjured testimony of three government witness.

The Michigan Supreme Court denied petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Castleberry*, No. 125028 (Mich. April 30, 2004) (docket no. 18).

After his unsuccessful appeal in the state courts, Castleberry filed a petition raising eight issues for habeas review:

I. Petitioner was deprived of his right to due process and a fair trial under the 14th amendment to the United States Constitution and under Section 17, Article I, Michigan Constitution 1963 when the trial judge failed and omitted to adequately instruct the jury that petitioner having raised the defense of self-defense the prosecution had the burden of proving beyond a reasonable doubt that petitioner did not act in self-defense; and when the tenor of the instruction had the effect of shifting the burden of proof onto petitioner.

II. Petitioner was denied his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under Section 17, Article I, Michigan Constitution 1963 when the prosecutor in voir dire, opening statement to the jury and in argument

4

to the jury (1) testified to facts of his own personal knowledge and (2) bolstered the credibility of his witnesses.

III.     Petitioner was deprived of his right under the 6th Amendment to the United States Constitution and under Section 20, Article 1, Michigan Constitution 1963 to effective assistance of counsel on the trial level when his trial counsel failed and omitted to object to the prosecutor's improper remarks to the jury in voir dire, opening, summation and in rebuttal.

IV.     Petitioner was denied his 6th Amendment constitutional right to the effective assistance of counsel as trial counsel failed to move for a change of venue or for disqualification of the judge where the preliminary examination judge also presided over petitioner's jury trial in the Circuit Court as the trial judge.

V.     Petitioner was denied his 6th and 14th Amendments constitutional rights to the effective assistance of counsel and to present a defense where trial counsel promised the jury that petitioner would be testifying and failed to call petitioner.

VI.     Petitioner was denied his 14th Amendment constitutional right to a fair trial and due process of law where the prosecutor violated the hearsay rule.

VII.     Petitioner was denied his 6th Amendment constitutional right to the effective assistance of counsel where counsel failed to object to the prosecutor's impermissible use of hearsay.

VIII.     Even if no assignment of error is sufficient for a reversal, the totality of errors denied petitioner a fair trial, US Const. Am. V & XIV; Mich. Const. 1963, Art. I, Sec. 17.

Petition (docket nos. 1 and 1-2).

Petitioner subsequently moved to dismiss his petition because he had identified a "very strong constitutional claim" since filing his petition and wished to file a motion a for relief from judgment to exhaust his new claim in the state courts. Motion to dismiss (docket no. 25). On April 24, 2008, the court entered an order which construed petitioner's motion to dismiss as a

motion to stay, granted the motion, and allowed petitioner to proceed with exhausting his claims in the Michigan state courts. Order to Stay (docket no. 32).

Petitioner filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.*, and a supplement to that motion, in the Berrien County Circuit Court. *See* Motion for relief and supplement (docket no. 52). In these filings, petitioner raised issues of prosecutorial misconduct; ineffective assistance of trial counsel for failing to object to the prosecutor's badgering of a witness (Brandon Hill); ineffective assistance of trial counsel for failing to impeach the testimony of one victim (Walker) about where petitioner shot the other victim (Lewis); and ineffective assistance of appellate counsel for failing to raise these new issues. *Id.* The trial court denied the motion as supplemented. Opinion and order (Aug. 26, 2008) (docket no. 53). In reaching this determination, the trial court did not address the issue of prosecutorial misconduct, because that issue was addressed by the Michigan Court of Appeals. *Id.* at p. 4. The court denied petitioner's motion with respect to the claims of ineffective assistance of counsel. Notably, the court rejected petitioner's claim that trial counsel failed to impeach Walker's testimony, noting that this testimony was corroborated by other witnesses and that appellate counsel was not ineffective for failing to raise the issue. *Id.* at p. 5.

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals raising a claim of ineffective assistance of counsel consisting of four sub-issues:

I.      Was [petitioner] deprived of his right to effective assistance of counsel and due process, under the state and federal constitutions, where

(a)     trial counsel failed to request a "non-deadly aggressor" jury instruction,

(b)     trial counsel failed to object to improper questions
        and statements from the prosecutor,

(c)     trial counsel failed to impeach a key prosecution
        witness,

(d)     appellate counsel failed to raise these claims of
        ineffective assistance of trial counsel on direct appeal.

*People v. Castleberry*, No. 293622 (Mich. App.) (Delayed App.) (docket no. 53). The Michigan

Court of Appeals denied the delayed application because petitioner "failed to meet the burden of

establishing entitlement to relief under MCR 6.508(D)." *Id.* (Order) (Nov. 6, 2009). There is no

record that petitioner filed an application to appeal this matter to the Michigan Supreme Court. In

this regard, respondent has produced an affidavit from Corbin R. Davis, Clerk of the Michigan

Supreme Court, stating that he (Davis) searched the files and records of the Michigan Supreme

Court and found that Michigan Court of Appeals docket no. 293622 was not appealed to that court.

Corbin Aff. (docket no. 54).

        This court re-opened his habeas action on March 31, 2010 and directed petitioner to

file an amended habeas petition. Order to Lift Stay (docket no. 39). Castleberry filed his amended

habeas petition on April 26, 2010, raising three issues (in his words):

Ground One & Two:

        Appellant asserts that he was deprived of his right to effective assistance of
        counsel and basic due process. Under State & Federal constitutions where trial
        counsel failed to object to improper questions and statements and where appellant
        counsel failed to raise these claims on appeal. Mich. Const. of 1963 Art. 1 Sec. 17
        & 20; U.S. Const. Amend. VI & XIV.

Grounds Three:

        Appellant asserts the Prosecutor deprived him of his right to basic due
        process under the State & Federal Constitution, by repeatedly insinuating, through
        questions & statements, that various witnesses were lying about their testimony.

Amended Petition (docket. no. 40); Amended Petition Exhibits (docket no. 40-3 at pp. 1-2).

In a supplemental response to the amended petition, respondent sought dismissal of the amended petition because it failed to comply with the directions set forth in the Court's April 24, 2008 order to stay. Supplemental Response (docket no. 43). On August 13, 2010, petitioner requested a form petition from the court so that he could raise the eight "major" constitutional issues that were timely filed in his original petition. *See* Letter (docket no. 47). The court gave Castleberry "one last opportunity" to restate his habeas claims in a second amended petition. Order (docket no. 56).

Petitioner timely filed his second amended petition. Second Amended Petition (docket nos. 57, 57-1, 57-2 and 57-3). While the second amended petition is a somewhat confusing document, the court construed it as raising the original eight issues and allowed respondent an opportunity to rely on his original response or to file a second supplemental response. Order (docket no. 59). Respondent chose to rely on the original response.

On January 23, 2012, petitioner filed another motion to stay the proceedings, so that he could exhaust three new issues in the state court, which this court denied. Motion to stay (docket no. 61); Order (docket no. 63). Most recently, petitioner moved to amend the petition to present further information with respect to his Issue IV. The court denied this motion, noting that both parties had addressed Issue IV in papers filed prior to the issuance of the stay. Order (docket no. 65). This matter, having come full circle, is now before the court on the eight issues set forth in the original petition.

## II.     Unexhausted and procedurally defaulted claims

### A.     Issues I, II, VI, VII and VIII

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).

Here, petitioner has exhausted five issues raised in his amended petition (Issues I, II, III, IV and V).  Petitioner did not exhaust Issues VI, VII and VIII because he failed to present these issues in an application for leave to appeal to the Michigan Supreme Court.  As discussed, *infra*, Issues VI, VII and VIII  are subject to the procedural default doctrine.   Although petitioner exhausted Issues I and II, these claims are also subject to the procedural default doctrine

### B.     Procedural default

Where the petitioner is prevented from seeking review in the state courts as a result of his own default, the doctrine of procedural default prevents the habeas court from entertaining a petition for writ of habeas corpus.  In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court stated:

> We now make it explicit:  In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. 722 at 750.

A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was " 'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.

### 1.    Issues VI, VII and VIII

Petitioner failed to exhaust Issues VI, VII and VIII. As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice to allow the petitioner to present his claims to the state courts. *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). Here, however, petitioner has filed his motion for post-conviction relief pursuant to MCR 6.500 *et seq.* and has no further avenue to exhaust in the state courts. For purposes of federal habeas review, a claim is subject to the procedural default doctrine where, as here, the petitioner failed to give the state courts a "full and fair" opportunity to resolve the claim and he cannot cure the failure because the state court remedies are no longer available. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). Issues VI, VII and VIII are procedurally defaulted.

### 2.    Issues I and II

The Michigan Court of Appeals performed only a limited, plain error review of Issue I, providing in pertinent part:

> Defendant initially argues that the trial court's jury instructions failed to fairly present the issue of self-defense to the jury. Specifically, defendant asserts that

the instructions failed to clearly inform the jury that he did not bear the burden of proving self-defense. "We review jury instructions in their entirety to determine if error requiring reversal occurred." Defendant's failure to object to the jury instructions as given, however, limits our review to plain error affecting his substantial rights.

*People v. Castleberry*, No. 238900, slip op. at p. 2 (footnotes omitted).

Similarly, the appellate court performed only a plain error review of Issue II, providing in pertinent part:

Defendant further argues that the prosecution made several improper comments during the trial that amounted to prosecutorial misconduct and denied him a fair trial. We disagree. Prosecutorial misconduct claims are reviewed case by case, examining any remarks in context, to determine if the defendant received a fair and impartial trial. Because defendant failed to object to this alleged misconduct, our review is again limited to plain error affecting his substantial rights. "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction."

*People v. Castleberry*, No. 238900, slip op. at p. 3 (footnotes omitted).

The Michigan Court of Appeals found that petitioner failed to object to both the jury instructions (Issue I) and the prosecutor's alleged improper comments (Issue II). As reflected in that court's opinion, the procedural rule which requires preserving both constitutional and non-constitutional issues at the trial by contemporaneous objection was firmly established and regularly followed at the time of petitioner's appeal. *See People v. Carines*, 460 Mich. 750, 764; 597 N.W.2d 130 (1999); *People v. Grant*, 445 Mich. 535, 546-47; 520 N.W.2d 123 (1994). Even though the state court provided limited review of the issues raised, petitioner's failure to object is still considered a procedural default. *Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). Accordingly, Issues I and II are also procedurally defaulted.

## C.     Cause and Prejudice

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Petitioner does not present any cause for his procedural default of Issues I, II, VI, VII and VIII.  Petitioner's failure to demonstrate cause prevents federal habeas review of these issues unless the court's failure to do so will result in a  "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup*, 513 U.S. at 321, the Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

A credible claim of actual innocence must be based on reliable evidence not presented at trial. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).  To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted  to find him guilty beyond a reasonable doubt." *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000)  ("in order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him").  Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.  "Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence

has been summarily rejected.'" *Calderon*, 523 U.S. at 559, quoting *Schlup*, 513 U.S. at 324. Petitioner offers no such new evidence that he is actually innocent of the crimes for which he was convicted.[1] Accordingly, petitioner has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's Issues I, II, VI, VII and VIII are procedurally barred and not subject to federal habeas review.

### III. Standard of review under 28 U.S.C. § 2254

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause,

---

[1] To the extent that petitioner claims that he is innocent because he acted in self-defense, such a claim does not meet the actual innocence requirement. "It is important to note in this regard that actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). A habeas petitioner fails to demonstrate actual innocence when such evidence was presented to the jury, but the jury chose to credit the state's evidence over that presented by petitioner. *See White v. Schotten*, 201 F.3d 743, 753-54 (6th Cir. 2000). Here, the jury rejected petitioner's evidence in favor of the state's evidence.

a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV. Discussion

**A. Petitioner was deprived of his right to effective assistance of counsel on the trial level when his trial counsel failed and omitted to object to the prosecutor's improper remarks to the jury in voir dire, opening, summation and in rebuttal. (Issue III)**

Petitioner contends that the prosecutor engaged in misconduct by making certain remarks during the course of the trial and that his defense counsel was ineffective for failing to object to these remarks.[2]  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland,* 466 U.S. at 687.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.  "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993).  Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-690.

In his state appellate brief, petitioner identified eight instances in which the prosecutor made improper remarks to which his counsel should have raised objections:

Petitioner complains of two comments made during the jury voir dire:

---

[2] While petitioner's claim of prosecutorial misconduct is procedurally defaulted and barred from federal habeas review, his related claim of ineffective assistance of trial counsel for failing to object to the prosecutor's alleged misconduct is not barred.  Ironically, the court will have to review the prosecutor's remarks in order to resolve petitioner's ineffective assistance claim.

(1)     "That's the gun right there that was used to kill Mr. Lewis and to shoot the other victim in this matter, Perry Walker. It's a pistol." (I 35); "A big pistol." (I 39).

(2)     "The defendant's already admitted to the police that he killed Rodney Lewis. He already admitted that he shot Perry Walker with that gun. . . . But what he's claiming in this case is, is that he did it because of the doctrine of self-defense, . . ." (I 40).

Petitioner complains of two comments made during the opening statement:

(3)     The injuries caused in this case were "All because they ran into this man, this punk that was carrying this .45 against the law." (I 110) (emphasis added).

(4)     While talking to the jury about [prosecution witness] Comon Rimpson: "He's a pretty sharp little kid. I've talked to him before." (I 112).

Petitioner complains of one comment made in the prosecutor's summation to the jury:

(5)     Regarding Comon Rimpson: "But I think he did a pretty good job, overall, as far as testifying. And I think he honestly tried to tell you the truth as far as what he remembers happening." (II 399).

Petitioner complains of three comments made in the prosecutor's rebuttal to the jury:

(6)     Regarding the testimony of [defense witness] Patsy Castleberry in rebuttal argument: "The story that she told you here today was 180 degrees different than what she told the cops, the day after this happened." (II 414).

(7)     Regarding Comon Rimpson's testimony: "He's not making it up, ladies and gentlemen. He tried to tell you as best he could." (II 416).

(8)     [Regarding the testimony of prosecution witness Brandon Hill] "Because originally Brandon had told the police officer – as a matter of fact, Brandon told me last week when I talked to him for the first time that he saw the defendant leave and come back and shoot Mr. Lewis in the head. That's when [sic] he said to the cops. That's what he said to me." (II 417).

*See* Petitioner's Brief on Appeal at pp. 12-13 (docket no. 17)

The Michigan Court of Appeals addressed petitioner's claim of ineffective assistance of counsel arising from these remarks as follows:

> Defendant claims that the prosecutor improperly testified to facts of his own personal knowledge and bolstered the credibility of his witnesses. The law is clear that a prosecutor may not personally vouch for a witness' credibility or suggest that the government has special knowledge that a witness testified truthfully. [FN13] However, where the jury is faced with a credibility question, the prosecutor is free to argue a witness' credibility from the evidence. [FN14]

> After reviewing the disputed comments in context, we find no error requiring reversal. The prosecutor's statements were fair comments on the evidence presented. [FN15] To the extent that any error could be imparted to the prosecution's brief comment during closing argument regarding what a witness told him the week before trial, reversal is not required. A prompt instruction could have cured any taint caused by this remark. [FN16] We further note that it appears that the prosecutor's statement was responsive to defense counsel's claim during closing arguments that the prosecution's witnesses were coached. [FN17]

> Similarly, we find no error requiring reversal with regard to the prosecutor's statements concerning Comon Rimpson. While some of these statements arguably bordered the line between vouching for a witness and arguing a witness' credibility from the evidence, defendant failed to show plain error affecting his substantial rights. [FN18] There was overwhelming evidence of defendant's guilt presented at trial and the record does not support a finding of self-defense.

> The defense of self-defense requires a situation where: (1) the defendant honestly believed that he was in danger; (2) the danger feared was death or serious bodily harm; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. [FN19] Here, defendant shot two unarmed men. Most notably, one of these men was shot in the back. Defendant also returned to shoot Mr. Lewis in the head after he was already on the ground. There is no evidence that any threatening moves were made towards defendant. This record does not support a finding that defendant reasonably believed that he was in imminent danger of death or serious bodily harm. [FN20]

> Because defendant cannot prove that the result of the proceedings would have been different but for his trial counsel's failure to object to the prosecution's alleged misconduct, his ineffective assistance of counsel claim on this ground must also fail. [FN21]

> FN13. *People v. Knapp*, 244 Mich.App 361, 382; 624 NW2d 227 (2001).

FN14. *People v. Launsbury*, 217 Mich.App 358, 361; 551 NW2d 460 (1996).

FN15. *See People v. Buckey*, 424 Mich. 1, 14-15; 378 NW2d 432 (1985).

FN16. *Knapp, supra* at 382.

FN17. *See Schutte, supra* at 721.

FN18. *Carines, supra* at 763-764.

FN19. *Kemp, supra* at 322-323.

FN20. *People v. Riddle*, 467 Mich. 116, 119; 649 NW2d 30 (2002).

FN21. *See People v. Carbin*, 463 Mich. 590, 600; 623 NW2d 884 (2001).

*People v. Castleberry*, No. 238900, slip op. at pp. 3-4.

To constitute prosecutorial misconduct, the prosecutor's statements must be so egregious as to deny petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "We analyze claims of prosecutorial misconduct based on improper statements under a two-part test: we ask first whether the remarks were improper, and then whether they were flagrant and warrant reversal." *United States v. Gabrion*, 648 F.3d 307, 349 (6th Cir. 2011), citing *United States v. Carroll*, 26 F.3d 1380, 1387–88 (6th Cir.1994).

In applying the first part of the test, the court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.*

Even if the court finds the prosecutor's conduct was improper, a constitutional violation would exist only if the statements meet the second part of the test, i.e., the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly*, 416 U.S. at 643-45; *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison*, 303 F.3d at 750. At this point, "[t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). The court should consider four factors in determining whether a prosecutor's improper remarks are so flagrant as to rise to the level of a due process violation: the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; whether the remarks were isolated or extensive; whether the remarks were accidentally or deliberately placed before the jury; and the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

Given these standards, the court finds nothing improper with respect to the prosecutor's remarks during voir dire (statements (1) and (2)). These remarks to the jury explained the nature of the crime, the weapon involved and petitioner's anticipated defense. In addition, the prosecutor's reference to petitioner in the opening statement as a "punk" carrying a .45 pistol (statement (3)) is not improper. This brief reference did not so infect petitioner's trial with unfairness as to make his conviction a denial of due process. *See Darden*, 477 U.S. at 181-82 (a prosecutor's reference in closing argument to the petitioner as an "animal" that should not be let

loose did not render petitioner's trial fundamentally unfair, observing that the argument "did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent"); *Givens v. Yukins*, No. 98-2429, 2000 WL 1828484 at *6 (6th Cir. Dec. 5, 2000) (prosecutor did not violate the petitioner's due process rights by referring to her as a "liar, thief, drug kingpin and prostitute" in closing argument).

Next, petitioner contends that the prosecutor's references to Comon Rimpson (statements (4), (5) and (7)) amounted to improper vouching. "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

> Generally, improper vouching involves either blunt comments, *see, e.g.*, *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g.*, [*United States v. Carroll*, 26 F.3d 1380,1388 (6th Cir. 1994)] (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

*Id*. The prosecutor's remarks concerning Comon Rimpson in statements (4) and (5) came very close to the type of "blunt comment" that could constitute improper vouching. The undersigned concludes that these remarks did not cross that line from advocacy to vouching.

However, statement (7) ("He's not making it up, ladies and gentlemen. He tried to tell you as best he could.") is the type of blunt statement that could constitute improper vouching by the prosecutor. However, when looking at the context of this statement, the court concludes that

it was not improper.  During closing argument, petitioner's counsel asserted that Comon Rimpson was not a credible witness:

> These witnesses, Perry [one of the victims] clearly was lying.  There's no question about it.  Comon Rimpson, you understand, is Perry's step-son.  He lives with him.  He hasn't heard anything about this case since May?  I'm not sure Comon remembers much of anything at all. I think what he knows about this case and what he's telling us is what he's been told and what he's heard.  He was sitting in the back seat of the car with the trunk deck up in the air.  From all the descriptions of everything that happened there, it's behind at the trunk.  You can't see it out the side window like he said.  You've got to see it out the back window.  He couldn't see out the back window.  What he knows is what people told him.  And that's when he's telling – what he's telling us here.

Trial Trans. II at pp. 410-11 (docket no. 13).

In his rebuttal argument, the prosecutor explained why Comon Rimpson's testimony was credible:

> Comon Rimpson is making this all up or his family is telling you.  [sic]  Well, he was on the stand when [defense counsel] was trying to cross-examine him.  Comon on his own said, "When I say that guy shoot my uncle and go across the street, I was looking out the side window."  That's what he told you, that he could see it.  Because that's where the defendant was according to all the testimony.  When he fired that shot the defendant's off to the side of the car by this building.  *He's not making it up, ladies and gentlemen.  He tried to tell you as best he could.*

*Id.* at p. 416.  (Emphasis added.)

Where the defense counsel attacks a witness' credibility during closing argument, it is not improper for the prosecutor to respond by arguing that the witness should be believed. *Hemphill v. Hudson*, 483 Fed. Appx. 118, 120-21 (6th Cir. 2012).  "It is not improper for a prosecutor to 'attempt to explain why, based on the facts, [a] witness's testimony is honest after the same has been attacked by the defense.'"  *United States v. Boyd*, 640 F.3d 657, 671 (6th Cir. 2011), quoting *United States v. Henry*, 545 F.3d 367, 379 (6th Cir. 2008).  Here, after defense counsel asserted that Comon Rimpson could not see crime and was simply repeating what others had told

him about the shooting, the prosecutor explained to the jury why, based on the facts, Comon Rimpson's testimony was honest.

Similarly, the prosecutor's other remarks on rebuttal were in response to credibility issues raised by petitioner's trial counsel. Statement (6) is part of the rebuttal argument in which the prosecutor pointed out inconsistencies in the testimony of the sole defense witness, Patsy Castleberry. During closing argument, defense counsel characterized Ms. Castleberry as the only truthful witness:

> The testimony of all these other [prosecution] witnesses sounds awfully rehearsed. You heard from Patsy Castleberry and I think her testimony probably tells you the accurate truth. What was going on there was so emotional, there was so much happening, with all the bullets and the screaming and people falling. There were children around. It was dark. It all happened so quickly and so emotionally that I can't believe these witnesses remember this frame by frame detail unless they've been rehearsing and rehearsing an awful lot.

Trial Trans. II at pp. 412-13.

In rebuttal, the prosecutor pointed out inconsistencies in Ms. Castleberry's testimony:

> Patsy Castleberry, ladies and gentlemen, if you choose to believe her, and that's certainly within your prerogative, I don't know how you could do that, based upon her demeanor up on the stand. Every time I tried to pin her down to something it was, "I don't remember," "I don't remember." *The story that she told you today was 180 degrees different than what she told the cops, the day after this happened.* And she didn't even want to admit to you that she had talked to the defendant prior to him turning himself in. Because the defendant says that in his taped statement. And she doesn't even have the courage or was willing to tell the truth about that. I submit to you that Patsy Castleberry is totally unbelievable.

*Id.* at pp. 413-14. (Emphasis added.)

Similarly, statement (8) is part of a rebuttal argument in which the prosecutor addressed defense counsel's claim that all of the prosecution's witnesses gave rehearsed testimony:

> I remember Brandon Hill when he came here. [Defense counsel] claims all our witnesses have rehearsed. Remember when I got a little bit upset with Brandon

22

when he was up on the stand? *Because originally Brandon had told the police officers – as a matter of fact Brandon told me last week when I talked to him for the first time that he saw the defendant leave and come back and shoot Mr. Lewis in the head. That's when [sic] he said to the cops. That's what he said to me.* Then, I put the young man up on the stand and he didn't want to say that, remember? I kind of had to get it out of him a little bit. And I had to get a little bit upset with him. But, he finally told you that he was scared and he was telling the truth. But, what he saw was the defendant leave, come back with that gun, approach Mr. Lewis laying there on the ground, come within a few feet on him, point the gun down at him, then he goes in the store. As soon as he's in the store, BOOM.

*Id.* at p. 417. Based on this record, the court concludes that none of the prosecutor's remarks, viewed in context, were improper and did not amount to prosecutorial misconduct.

In the absence of prosecutorial misconduct, there was no basis for petitioner's trial counsel to object to the prosecutor's statements. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See United States v. Severson*, 230 F.3d 221, 225 (6th Cir. 2000) (where trial counsel's objection to the admission of certain records would have been overruled, counsel was not deficient for failing to raise that objection); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

The state court's decision regarding ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner's claim for relief should be denied as to Issue III.

**B.** **Petitioner was denied his constitutional right to the effective assistance of counsel when trial counsel failed to move for a change of venue or for disqualification of the judge where the preliminary examination judge also presided over petitioner's jury trial in the Circuit Court as the trial judge. (Issue IV)**

The Michigan Court of Appeals addressed this issue as follows:

Defendant, in propria persona, argues that he was denied the effective assistance of counsel. Because defendant did not move for a *Ginther* [FN22] hearing, our review is limited to the existing record. [FN23] An unpreserved constitutional error warrants reversal only when it is a plain error that affects a defendant's substantial rights. [FN24]

Effective assistance of counsel is presumed and defendant bears a heavy burden to prove otherwise. [FN25] To establish ineffective assistance of counsel, defendant must prove: (1) that his counsel's performance was so deficient that he was denied his Sixth Amendment right to counsel; and (2) that this deficient performance prejudiced him to the extent there is a reasonable probability that but for counsel's error, the result of the proceedings would have been different. [FN26] Defendant must also overcome the strong presumption that his counsel's performance was sound trial strategy. [FN27]

Defendant initially contends that his trial counsel was ineffective for failing to move for a change of venue or disqualification of the trial judge. He claims that reversal is required because St. Joseph Circuit Court Judge Dennis Wiley "may" have prejudged the case given his involvement in the preliminary examination. As a general rule, a judge will not be disqualified absent a showing of actual bias or prejudice. [FN28] We note, however, that defendant was tried and convicted by a jury in this case. A review of the record further fails to reveal any instance wherein Judge Wiley could have used his knowledge of the preliminary examination to make a ruling, let alone prejudge defendant's case. Absent evidence that Judge Wiley possessed personal knowledge of any disputed evidentiary facts, beyond what he learned during the course of the judicial proceedings, disqualification is unwarranted. [FN29] For these reasons, defendant has also failed to show that good cause existed to warrant a change of venue. [FN30] Defense counsel is not required to make frivolous or meritless motions. [FN31]

FN22. *People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973).
FN23. *People v. Snider*, 239 Mich.App 393, 423; 608 NW2d 502 (2000).
FN24. *Carines, supra* at 763-764.

24

FN25. *People v. Rockey*, 237 Mich.App 74, 76; 601 NW2d 887 (1999).
FN26. *Carbin, supra* at 599-600.
FN27. *Id.* at 600.
FN28. *People v. Houston*, 179 Mich.App 753, 756; 446 NW2d 543 (1989).
FN29. *See* MCR 2.003(B)(1) and (2); *see also First Michigan Bank v. Bailey*, 232 Mich.App 711, 728-729; 591 NW2d 676 (1998).
FN30. *See* M.C.L. § 762.7.
FN31. *People v. Darden*, 230 Mich.App 597, 605; 585 NW2d 27 (1998).

*People v. Castleberry*, No. 238900, slip op. at pp. 4-5.

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal quotation marks and citations omitted). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Other than noting that the trial judge presided at his preliminary examination, petitioner has failed to demonstrate how the trial judge's prior experience resulted in "a deep-seated favoritism or antagonism" that made fair judgment impossible during petitioner's jury trial. Based on this record, there was no basis for petitioner's trial counsel to move for removal of the trial judge in this case. Petitioner's trial counsel cannot be considered ineffective for failing to file a meritless or futile motion. *See Severson*, 230 F.3d at 225; *Sanders*, 165 F.3d at 253; *Ludwig*, 162 F.3d at 459 *Lilly*, 988 F.2d at 786.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based

on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254

(d).  Petitioner's claim for relief should be denied as to Issue IV.

> ### C.  Petitioner was denied his constitutional rights to the effective assistance of counsel and to present a defense where trial counsel promised the jury that petitioner would be testifying and failed to call petitioner. (Issue V)

The Michigan Court of Appeals addressed this issue as follows:

> Defendant further alleges that his trial counsel rendered ineffective assistance when he promised the jury that defendant would testify and then failed to call defendant as a witness.  A review of the record, however, does not support defendant's claim.  Rather, the record shows that defense counsel was referring to the taped statement that defendant made to the police explaining that he acted in self-defense.  This taped statement was ultimately played for the jury at trial.

*People v. Castleberry*, No. 238900, slip op. at p 5.

The Michigan Court of Appeals found this claim to be factually incorrect.  This finding by the Michigan Court of Appeals is presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1); *Brumley*, 269 F.3d at 637.  Petitioner has failed to meet his burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *See Magana*, 263 F.3d at 546-47.  On the contrary, the record supports the appellate court's factual finding.  During the opening statement, the prosecutor referred to petitioner's tape-recorded statement made to the police the day after the shooting and described events that "he's going to tell you on that tape."  Trial Trans. I at pp. 116-17.  In his opening statement, petitioner's defense counsel summarized petitioner's version of the events including petitioner's claim of self-defense. Trial Trans. I at pp. 119-21.  In describing petitioner's claim of self-defense, petitioner's counsel stated:

> The government must prove that Otis Castleberry was not acting in self-defense. Otis does not have to prove that he was acting in self-defense. He's certainly going to offer evidence to that effect, and he's going to tell you that he was acting in self-defense.

*Id.* at p. 119. Counsel went on to tell the jury that "in his statement to the police" petitioner "explained all of this to the police" and that "You're going to hear it on this tape." *Id.* at p. 121. While reading portions of the transcript of petitioner's taped statement, which included a detailed description of petitioner's encounter with the victims, petitioner's trial counsel remarked,

> Otis [petitioner] is going to tell you from his vantage point he couldn't run. He was in a position where he was cornered. He couldn't get away. He truly believed that this gentleman was coming up out of the trunk with some kind of weapon, especially with the aggressive attitude of Mr. Walker coming at him and not leaving the argument alone. And that he was either shoot [sic] to defend himself or he'd be shot.

*Id.* at p. 124.

The court does not view Counsel's opening statement as including "a promise" to present petitioner as a witness. Both the prosecutor and defense counsel referred to petitioner's tape-recorded statement to the police. Counsel's remarks, taken in this context, appear to be an attempt to highlight portions of this tape-recorded statement to the jury, and to emphasize petitioner's claim of self-defense.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner's claim for relief should be denied as to Issue V.

## V.    Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**.

Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  February 14, 2013                              /s/ Hugh W. Brenneman, Jr.
                                                       HUGH W. BRENNEMAN, JR.
                                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).